## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

| | |
|---|---|
| **RONALD ANDERSON and**<br>**ANNA MARIA CRUZ,**<br>individually and on behalf of all other<br>similarly situated individuals,<br><br>      **Plaintiffs,**<br><br>**v.**<br><br>**LOWE'S COMPANIES, INC.**<br>1000 Lowe's Boulevard<br>Mooresville, North Carolina 28117<br><br>**SERVE:** Office of the Secretary of State<br>         Summons Branch<br>         700 Capital Ave., Ste. 86<br>         Frankfort, KY 40601<br><br>**and**<br><br> **LOWE'S HOME CENTERS, LLC,**<br>1605 Curtis Bridge Road<br>Wilkesboro, North Carolina  28697<br><br>**SERVE**: Corporation System Service<br>        421 West Main Street<br>        Frankfort, KY  40601<br><br>      **Defendants.** | Civil Action No.: <u>3:20-cv-189-GNS</u><br><br><br><br><br><br>**CLASS ACTION COMPLAINT AND JURY**<br>**DEMAND** |

Plaintiffs RONALD ANDERSON and ANNA MARIA CRUZ ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Class Action Complaint against Defendants LOWE'S COMPANIES, INC. and LOWE'S HOME CENTERS, LLC ("Defendants"), and state as follows:

1

## INTRODUCTION

1.      This is a class action brought pursuant to Fed. R. Civ. P. 23 by Plaintiffs, individually and on behalf of all similarly situated persons employed by Defendants, arising from Defendants' willful violations of the Kentucky Wages and Hours Act, KRS §§ 337.010, *et. seq.* ("Kentucky Wage Act").

2.      Defendants are an American retail company specializing in home improvement. Headquartered in Mooresville, North Carolina, Defendants operate a chain of retail stores in the United States, Canada, and Mexico. As of 2019, Defendants and their related businesses operate more than 2,000 home improvement and hardware stores and employ over 245,000 people in North America.

3.      In order to effectively operate their chain of retail stores, Defendants employ non-exempt hourly managers, including Department Managers, Service Managers and Support Managers (hereinafter collectively referred to as "Hourly Managers"), to supervise and oversee the retail stores, or various departments within the retail stores, and to manage the retail stores' employees.

4.      Defendants require their Hourly Managers to work a full-time schedule, plus overtime. However, Defendants do not compensate their Hourly Managers for all hours worked; instead, Defendants require their Hourly Managers to perform compensable work tasks before and after their scheduled shifts and during their unpaid meal periods, when they are not clocked into Defendants' timekeeping system. These policies result in Hourly Managers not being paid for all time worked, including overtime.

5.      More specifically, Defendants maintain and have maintained a policy and practice of failing to pay Plaintiffs and Hourly Managers for time spent reading and responding to work-

2

related smartphone communications during non-work hours, including during unpaid meal periods, or for being required to report early for work to perform a perimeter check of the premises by slowly driving their vehicles around the outer perimeter of the retail store to ensure that nothing out of the ordinary has occurred overnight. Plaintiffs and Hourly Managers perform other pre- and post-shift work tasks that go uncompensated, such as unlocking and locking the main entrance, arming and disarming the alarm system, and logging into and out of Defendants' computer system. Plaintiffs and Hourly Managers spend significant time performing this off-the-clock work, but Defendants do not compensate them for it. Because much of this time qualifies as overtime within the meaning of applicable state laws, Plaintiffs and Hourly Managers are owed overtime pay for this uncompensated, off-the-clock work.

6.      The individuals Plaintiffs seek to represent in this action are current and former Hourly Managers who are similarly situated to each other in terms of their positions, job duties, pay structure, and Defendants' violations of state law.

7.      Defendants knew or could have easily determined how long it takes Hourly Managers to complete their off-the-clock work, and Defendants could have properly compensated Plaintiffs and the putative Class for this work, but deliberately chose not to.

8.      Plaintiffs seek a declaration that their rights, and the rights of the Class members, were violated, an award of unpaid wages and liquidated damages, injunctive and declaratory relief, attendant penalties, and an award of attorneys' fees and costs to make them whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendants to such illegal conduct in the future.

3

## JURISDICTION

9.      This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed Class have a different citizenship than Defendants.

10.     The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the state law claims and the federal claims are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

11.     The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

12.     The Court also has diversity jurisdiction over Plaintiffs' claims pursuant to 29 U.S.C. § 1332, as the parties are completely diverse and the amount in controversy exceeds $75,000.00.

13.     The Court has personal jurisdiction over Defendants pursuant to KRS 454.210 (Kentucky's Long Arm Statute) and applicable federal decisions concerning personal jurisdiction and the proper application of Constitutional Due Process as Defendants "transact business in the Commonwealth of Kentucky, "contract to supply good and services in Kentucky", and have sufficient "minimum contacts" with the State of Kentucky to support personal jurisdiction as to claims arising out of its purposeful activities in the state including its operation of numerous retail stores within the Commonwealth of Kentucky to confer jurisdiction over them.  Moreover, the assumption of jurisdiction over Defendants will not offend traditional notions of fair play and

substantial justice and is consistent with the Constitutional requirements of Due Process. Finally, Defendant Lowe's Home Centers, LLC is a business registered with the Kentucky Secretary of State's Office to conduct business in the Commonwealth of Kentucky and has designated Corporation Service Company, 421 West Main Street, Frankfort, Kentucky 40601 as its registered agent for service of process.

## VENUE

14.     Venue is proper in the Western District of Kentucky because a substantial portion of the events forming the basis of this suit occurred in the District.

## INTRADISTRICT ASSIGNMENT

15.     A substantial part of the events or omissions giving rise to the claims alleged herein occurred in the city of Louisville; therefore, this action is properly assigned to the Louisville Division.

## PARTIES

16.     Plaintiff RONALD ANDERSON ("Plaintiff Anderson") is a Kentucky resident who worked for Defendants as a Service Manager at Richmond Lowe's, 814 Eastern Bypass, Richmond, Kentucky 40475 (Store #1006) from January 2017 until October 2017. Defendants compensated Plaintiff Anderson through the payment of an hourly wage of approximately $19.12 per hour.  Plaintiff Anderson also worked for Defendants as a Service Manager at E. Louisville Lowe's, 501 So. Hurstbourne Pkwy, Louisville, Kentucky 40222 (Store #0474) from October 2017 until March 2018.  Defendants compensated Plaintiff Anderson through the payment of an hourly wage of approximately $19.12 per hour.  Plaintiff Anderson also worked for Defendants as a Service Manager at E. Louisville Lowe's, 501 So. Hurstbourne Pkwy, Louisville, Kentucky 40222 (Store #0474) from March 2018 until October 2018.  Defendants

compensated Plaintiff Anderson through the payment of an hourly wage of approximately $19.69 per hour.

17.     Plaintiff ANNA MARIA CRUZ ("Plaintiff Cruz") is a Kentucky resident who worked for Defendants as a Front End Support at Elizabethtown Lowe's, 100 Lowe's Drive, Elizabethtown, KY 42701 (Store #0460) from June 2018 until May 2019. Defendants compensated Plaintiff Cruz through the payment of an hourly wage of approximately $18.00 per hour.

18.     Defendant LOWE'S COMPANIES, INC. is a North Carolina corporation (SosId: 0087443) with a Principal Office at 1000 Lowe's Blvd, Mooresville, North Carolina 28117-8520. Defendant Lowe's Companies, Inc.'s Registered Agent for service of process is Corporation Service Company.

19.     According to Defendant Lowe's Companies, Inc.'s website, it has 42 stores in the State of Kentucky. Lowes.com, *Kentucky*, available at https://www.lowes.com/Lowes-Stores/Kentucky/KY (last accessed Feb. 10, 2020).

20.     Defendant LOWE'S HOME CENTERS, LLC is a North Carolina limited liability company (SosId: 0087619) with a Principal Office at 1605 Curtis Bridge Rd, Wilkesboro, North Carolina 28697-2231. Defendant Lowe's Home Centers, LLC's Registered Agent for service of process is Corporation Service Company.

21.     According to business news website Bloomberg.com, Lowe's Home Centers LLC retails home improvement, building materials, and home appliances; its address is: 1605 Curtis Bridge Road Wilkesboro, NC 28697 United States of America; it was founded on October 13, 1958; and it currently employs 209,850 employees. Bloomberg.com, *Lowe's Home Centers LLC*, available at https://www.bloomberg.com/profile/company/0579589D:US (last accessed Feb. 6,

2020).

22.     Upon information and belief, Defendants have employed thousands of Hourly Managers—including Plaintiffs—in the applicable time period to perform services that include supervising and overseeing the retail stores, or various departments within the retail stores, and managing the retail stores' employees.

## GENERAL ALLEGATIONS

23.     Defendants employed Plaintiffs as Hourly Managers in the state of Kentucky. In that position, Plaintiffs were compensated pursuant to an hourly wage and typically worked a rotating schedule consisting of five to six days and up to 40 or more hours each week, resulting in overtime hours on a weekly basis.

24.     Throughout their employment with Defendants, Plaintiffs were required to work a substantial amount of unpaid time, including overtime, as part of their jobs as Hourly Managers.

25.     Defendants' Department Managers are responsible for, among other things: (a) opening and closing the retail store; (b) leading and enabling a team of associates to deliver the best possible customer experience in the store by coaching and training associates, managing performance, and ensuring adequate department coverage at all times; (c) assuming responsibility for both customer facing activities (e.g., greeting customers, clarifying needs and identifying solutions, and closing sales) and non-facing activities (e.g., down stocking, inventory management, and area recovery); (d) ensuring his/her area of the store is in-stock and customer ready at all times while inspiring engaging, customer-focused behavior and driving his/her team to achieve sales and margin goals; (e) keeping management informed, delegating and following-up on daily tasks, and maintaining a clean, safe and secure work environment; (f) supervising associates in his/her own area; (g) leading associates in other departments, as needed, to meet the

7

demands of the store, which requires broad product knowledge and the ability to engage associates and customers across departments; (h) at times, serving as manager-on-duty (MOD); and (i) moving large, bulky and/or heavy merchandise and performing tasks that may require prolonged standing, sitting, and other activities necessary to perform job duties.

26.     Defendants' Service Managers are responsible for, among other things: (a) opening and closing the retail store; (b) enabling and empowering a team of Customer Service Associates ("CSAs") to deliver the best possible customer service experience in the store by assuming responsibility for customer facing activities on the sales floor (e.g., greeting customers, listening and probing to understand needs, and identifying solutions), as well as non-customer facing activities (e.g., down stocking, inventory management and area recovery); (c) ensuring department(s) are customer ready at all times while inspiring engaging, customer-focused behavior, mitigating and reducing customer complaints, and driving positive first impressions for customers upon entering the store; (d) coaching, mentoring, training, and continually monitoring CSAs in their assigned areas; (e) leading CSAs in other departments, as needed, to meet the demands of the store, which requires broad product knowledge and the ability to engage employees and customers across departments; and (f) moving large, bulky and/or heavy merchandise and performing tasks that may require prolonged standing, sitting, and other activities necessary to perform job duties.

27.     Defendants' Support Managers are responsible for, among other things: (a) opening and closing the retail store; (b) planning, scheduling, monitoring, and successfully implementing all non-selling operations in the front-end of the store (i.e., cashier and administrative functions); (c) facilitating the store's ability to provide a superior customer shopping experience and maximize sales and profitability by overseeing the Administrative

8

office, researching shortages or overages, depositing cash in the bank, handling register pulls and loans, managing exchange and loaner accounts, and monitoring Customer Service desk activity; (d) planning, scheduling, monitoring, and successfully implementing all non-selling operations in the back-end of the store (during the overnight shift or the Night Ops role); (e) leading a team responsible for critical support processes including receiving and stocking inventory, assembling product, and delivery; (f) training associates, managing performance, and creating schedules for the team to ensure adequate department coverage at all times; (g) collaborating and communicating with peers on the leadership team to ensure that critical information is being shared and to determine the most effective methods for meeting service objectives and customer needs; and (h) moving large, bulky and/or heavy merchandise and performing tasks that may require prolonged standing, sitting, and other activities necessary to perform job duties.

28.     Defendants require their Hourly Managers to clock in/out for their shifts but do not accurately record the Hourly Managers' compensable work time as required by law.

**A.      The Kronos Timekeeping System**

29.     All hourly employees—including Hourly Managers—across all of Defendants' retail stores use the computer software program "Kronos" to track their hours worked for purposes of compensation.

30.     The Kronos timekeeping system, however, fails to properly account for and compensate Hourly Managers for all time worked, including their overtime hours, during each day and during each workweek. This is because Hourly Managers are required to perform compensable work tasks before and after their shifts and outside of the retail store, when they are unable to log into the Kronos timekeeping system. This policy results in Hourly Managers not being paid for all time worked, including overtime.

9

31.     Hourly Managers cannot log into the Kronos timekeeping system (i.e., "punch in" or "punch out") until they are physically inside the retail store where Defendants' desktop computer is available. In fact, hourly employees cannot log into the Kronos timekeeping system unless they are ground-connected to Defendants' internet system, meaning they cannot log into Kronos using Wi-Fi or any other wireless technology, which is to say that hourly employees cannot log into Kronos for purposes of tracking their time unless and until they are physically inside the retail store.

32.     Thus, it is impossible for hourly employees, including Hourly Managers, to log into Kronos before entering a Lowe's retail store, meaning that Hourly Managers who are responsible for performing any work activities outside of the retail store—such as conducting perimeter checks, unlocking the main entrance, and disarming the alarm system—necessarily perform these activities *before* "punching in" to Kronos, i.e., off the clock. In fact, *all* activities that take place outside of the store location go uncaptured by the Kronos system.

33.     Hourly employees are only compensated for the time spent logged into the Kronos timekeeping system, meaning that any time worked "off the clock" that is not inputted into Kronos goes unpaid. Hourly Managers have override capability to retroactively adjust other employees' work hours as recorded in Kronos, but cannot retroactively adjust their own work hours because that feature is blocked within Kronos.

34.     Every Lowe's retail store has a main entrance that must be locked and unlocked and an alarm system that must be armed and disarmed when the retail store opens and closes each morning and each evening, meaning that certain work activities—namely, opening and closing the retail store itself—necessarily occur at *every* Lowe's retail store but cannot be captured by the Kronos timekeeping system.

10

### B.     Pre-Shift Off-the-Clock Work

35.     Plaintiffs and the Hourly Managers work a rotating schedule requiring them to work five to six days per week and are required to open the retail store multiple times per week.

36.     Pursuant to Defendants' policies, training and direction, Hourly Managers responsible for opening the retail store are required to perform a series of essential work tasks *before* their scheduled shift and *before* clocking into the Kronos timekeeping system. These pre-shift work activities take substantial time, ranging from 10 to 15 minutes per shift, or even longer. Before each shift and before clocking into the Kronos timekeeping system, Hourly Managers responsible for opening the retail store must undertake the following essential work tasks:

- Immediately upon arriving at the retail store, the Hourly Manager must perform a perimeter check of the premises by slowly driving their vehicle around the outer perimeter of the retail store to ensure that nothing out of the ordinary has occurred overnight (such as burglary, vandalism, weather-related damage, or anything else that could pose a safety hazard to employees or customers).[1] If the Hourly Manager spots anything out of the ordinary, they must exit their vehicle to investigate, and, if necessary, extinguish, remove or otherwise eliminate the safety hazard.

- After performing a perimeter check of the retail store's premises, the Hourly Manager must park their vehicle, walk to the main entrance of the retail store, and unlock the entrance using a key.

- After unlocking the main entrance, the Hourly Manager must walk to the alarm system and disarm the alarm by punching in a passcode (the Hourly Manager has one minute to disarm the alarm system before the alarm goes off).

- After disarming the alarm system, the Hourly Manager must walk back to the main entrance to let in any other employees who have arrived for the morning shift so that they can get into the store, stow their personal belongings, and clock in on time.

- Finally, the Hourly Manager must walk to Defendants' desktop computer, turn on/wake up the computer, open Google Chrome or Internet Explorer by clicking the Google Chrome or Internet Explorer icon, search for and log into the Kronos time and

---

[1] Hourly Managers must perform a perimeter check of the premises before *each and every shift*, not just the opening shift. This is because Defendants want Hourly Managers to be "aware" of the building and its surroundings before entering the retail store.

11

attendance software using a username and password, and click "Start Shift."

37.     The Hourly Managers are not compensated for this time because they cannot log into the Kronos timekeeping system (i.e., "punch in" or "punch out") until they are physically inside the retail store where Defendants' desktop computer is available.

38.     From the time that the Hourly Managers arrive to work and start performing the perimeter check of the premises until the time that they clock into the Kronos timekeeping system takes substantial time, ranging from 10 to 15 minutes per shift, or even longer if the Hourly Manager had to exit his or her vehicle to investigate or resolve a safety hazard, meaning that the Hourly Manager who opens the retail store performs a minimum of 10 to 15 minutes of off-the-clock work without compensation.

39.     The unpaid off-the-clock work performed by Plaintiffs and all other Hourly Managers before their shifts directly benefits Defendants, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as Hourly Managers.

**C.     Meal-Period Off-the-Clock Work**

40.     Under Kentucky law, Defendant's Hourly Managers are entitled to a "reasonable period for lunch." KRS § 337.355.

41.     In order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. The relevant administrative regulations states:

> Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The ***employee must be completely relieved from duty*** for the purpose of eating regular meals. Ordinarily, thirty (30) minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. ***The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating***. It is not necessary that an employee be permitted to leave the premises if

he is otherwise completed freed from duties during the meal period.

803 KY. Admin. Regs. 1:065 § 4 (emphasis added).

42.     Defendants do not provide Hourly Managers with bona fide meal periods because they require the Hourly Managers to read and respond to work-related smartphone communications during their unpaid meal breaks.

43.     The work performed by Hourly Managers during their unpaid meal breaks takes substantial time, in the range of 5 minutes per shift or more, but Hourly Managers are not paid for this time.

**D.     Post-Shift Off-the-Clock Work**

44.     Plaintiffs and the Hourly Managers work a rotating schedule requiring them to work five to six days per week and are required to close the retail store multiple times per week. For security reasons, Hourly Managers typically close the retail store in pairs, as it is rare for Hourly Managers to close the store alone.

45.     Pursuant to Defendants' policies, training and direction, Hourly Managers responsible for closing the retail store are required to perform a series of essential work tasks *after* their scheduled shift and *after* clocking out of the Kronos timekeeping system. After each shift and after clocking out, Hourly Managers responsible for closing the retail store must walk to the alarm system and arm the alarm by punching in a passcode. Then, the Hourly Managers must walk to the main entrance, and, subsequent to exiting the store, close the main entrance, lock it using a key, and ensure that the main entrance is securely locked. This post-shift process takes substantial time, in the range of 2 to 3 minutes per shift, but can take upwards of 10 to 15 minutes or more if the Hourly Managers encounter security issues while attempting to arm the alarm system.

13

46.     Oftentimes, when attempting to arm the alarm system, the system will display a warning or error message alerting the Hourly Managers of a security issue, such as a partially open or unlocked door, that needs to be resolved before the system can be properly armed. The Hourly Managers must then walk to the area of the store that is the source of the security issue, resolve the issue, walk back to the main entrance where the alarm system is located, and arm the alarm system.

47.     After arming the alarm system and securely locking the main entrance, it is not unusual for the Hourly Managers to observe unattended shopping carts or flatbeds in the parking lot because the hourly staff responsible for the carts either failed to retrieve them or retrieved them early and then there were late customers bringing carts out. Thus, it is not atypical for Hourly Managers to retrieve and collect shopping carts and flatbeds even after having already clocked out and locking the main entrance.

48.     The unpaid off-the-clock work performed by Plaintiffs and Hourly Managers after their shifts directly benefits Defendants, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as Hourly Managers.

**E.      Off-the-Clock Smartphone Communications**

49.     In addition to the pre-shift, meal-period, and post-shift off-the-clock work activities described above, Hourly Managers are also required to perform substantial amounts of off-the-clock work when they are off-duty and not at the retail store.

50.     Pursuant to Defendants' policies, training and direction, Hourly Managers are required to read and respond to work-related smartphone communications during non-work hours, including using the WhatsApp Messenger ("WhatsApp"), a free to download messenger

14

application for smartphones. WhatsApp uses the internet to send messages, images, audio or video. The service is very similar to text messaging services, however, because WhatsApp uses the internet to send messages, the cost of using WhatsApp is significantly less than texting. Relevant here, WhatsApp allows users to communicate with each other in groups of individual users, meaning users can communicate with multiple people at the same time.

51.     Defendant's Elizabethtown Hourly Managers were required to download and use the WhatsApp application. At the Elizabethtown location, Defendants required the Hourly Managers to (a) download and install WhatsApp onto their smartphones; (b) accept an invitation to join a group chat consisting of all of Elizabethtown's salaried and Hourly Managers; and (c) promptly respond to any work-related messages that are directed to them or that are otherwise within their sphere of responsibility, meaning that each Hourly Manager is required to read each and every message sent by any other user who is a member of the group chat, even if the message is not directed to them or is otherwise not within their sphere of responsibility. This policy was changed by Store Manager Willy Davis, Jr. ("Davis"), who directed the managers to instead join a group text message. During this time, the store's managers were still required to read and respond to all of the text messages in the group text. However, Davis later restored the WhatsApp requirement for all Hourly Managers.

52.     Similarly, Defendant's Louisville Store's Assistant Store Manager, Tanya Erickson expressly directed Plaintiff Anderson and the Hourly Managers at the Louisville store to download and install WhatsApp onto their smartphones and promptly respond to any work-related messages that are directed to them or that are otherwise within their sphere of responsibility.

15

53.     Reading and responding to these work-related messages during non-work hours takes substantial time, generally anywhere from 20 to 30 or more minutes per day, but Hourly Managers are not compensated for this time.

     **F.**    **Defendants Benefited from the Uncompensated Off-the-Clock Work**

54.     At all relevant times, Defendants directed and directly benefited from the work performed by Plaintiffs and similarly situated employees in connection with the above-described off-the-clock activities performed by Hourly Managers.

55.     At all relevant times, Defendants controlled the work schedules, duties, protocols, applications, assignments and employment conditions of their Hourly Managers.

56.     At all relevant times, Defendants were able to track the amount of time Hourly Managers spent in connection with the off-the-clock activities. However, Defendants failed to do so and failed to compensate Hourly Managers for the off-the-clock work they performed.

57.     At all relevant times, Hourly Managers were non-exempt employees.

58.     At all relevant times, Defendants used their attendance and adherence policies against the Hourly Managers in order to pressure them into performing the off-the-clock work.

59.     At all relevant times, Defendants' policies and practices deprived Hourly Managers of wages owed for the off-the-clock activities they performed. Because Defendants' Hourly Managers typically worked 40 hours or more in a workweek, Defendants' policies and practices also deprived them of overtime pay.

60.     Defendants knew or should have known that the time spent by Hourly Managers in connection with the off-the-clock activities was compensable under the law. Indeed, in light of Defendants' express instructions to the Hourly Managers that they were required to (a) perform a perimeter check of the premises before entering the retail store and clocking in, and (b) promptly

16

respond to work-related smartphone communications during non-work hours, there is no conceivable way for Defendants to establish that they acted in good faith.

61.    Despite knowing Hourly Managers performed work before and after their scheduled shifts and during their unpaid meal breaks, Defendants failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

62.    Unpaid wages related to the off-the-clock work described herein are owed to Hourly Managers at the mandated overtime premium of one and one-half their regular hourly rate because Hourly Managers regularly worked in excess of 40 hours in a workweek.

## **RULE 23 CLASS ACTION ALLEGATIONS**

63.    Plaintiffs bring this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on behalf of the following putative Class ("Rule 23 Class"). The Rule 23 Class is defined as follows:

> ***All similarly situated current and former Hourly Managers who work or have worked for Defendants at any of their retail locations in Kentucky at any time during the applicable statutory period***.

64.    Excluded from the Rule 23 Class are Defendants' exempt executives and administrative and professional employees, including computer professionals and outside sales persons.

65.    *Numerosity:*  The putative Class members from Kentucky are so numerous that joinder of all members in the case would be impracticable.

66.    *Commonality/Predominance:*  There is a well-defined community of interest among Class members and common questions of *both* law and fact predominate in the action over any questions affecting individual members.  These common legal and factual questions, include, but are not limited to, the following:

> a.    Whether the off-the-clock time worked by the Rule 23 Class members in connection with the activities described in this Complaint is compensable time;

17

b.	Whether the Rule 23 Class members are owed wages for the off-the-clock time worked in connection with the activities described in this Complaint;

c.	Whether Defendants engaged in a policy or practice of failing to pay each Rule 23 Class member regular wages or minimum wage for each non-overtime hour worked;

d.	Whether Defendants engaged in a policy or practice of failing to pay each Rule 23 Class member overtime compensation for each overtime hour worked; and

e.	Whether Defendants should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating the state laws and wage acts applicable to the members of the Rule 23 Class.

67.	*Typicality:*  Plaintiffs' claims are typical of claims of the Rule 23 Class they seek to represent in that Plaintiffs and all other members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices.  Plaintiffs' claims arise from Defendants' similar policies, practices, and course of conduct as all other Class members' claims and Plaintiffs' legal theories are based on the same or similar facts.

68.	*Adequacy:*  Plaintiffs will fully and adequately protect the interests of the Rule 23 Class and have retained national counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

69.	*Superiority:*  A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible for the Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

70.	This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendants and its corporate clients all

have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

71.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

72.     Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## RULE 23 KENTUCKY CLASS ACTION
## VIOLATIONS OF THE KENTUCKY WAGE AND HOURS LAWS, KY. REV. STAT. ANN., §§ 337.010, *et seq.* ("KENTUCKY WAGE ACT")

73.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

74.     Kentucky's Wage and Hours Act, KRS §§ 337.010, *et. seq.*, requires employers to pay their employees minimum wages and time-and-a-half their regular rate of pay of hours worked in excess of forty (40) per week. *See* KRS § 337.275; KRS § 337.285.

75.     KRS § 337.020 provides that "Every employer doing business in this state shall, as often as semimonthly, pay to each of its employees all wages or salary earned to a day not more than eighteen (18) days prior to the date of that payment."

76.     Under KRS § 337.385, an employee who has not been paid in accordance with Kentucky's Wages and Hours Act may bring a civil action to recover "full amount of such wages and overtime compensation, less any amount actually paid to such employee by the employer, for an additional equal amount as liquidated damages, and for costs and such reasonable attorney's fees as may be allowed by the court."

77.     At all times relevant to the action, Defendants were employers covered by the overtime and wage mandates of the Kentucky Wage Act and the Rule 23 Class are employees entitled to the Kentucky Wage Act's protections.

78.     The Kentucky Wage Act entitles employees to compensation for every hour worked in a workweek.

79.     The Kentucky Wage Act entitles employees to overtime compensation at a rate equal to one and one-half the amount of their regular rate of pay for all hours worked in excess of 40 hours per week. *See* Ky. Rev. Stat. Ann. § 337.285. The Kentucky Wage Act also entitles employees to overtime compensation at a rate equal to one and one-half the amount of their regular rate of pay for any work performed on the seventh work day of any workweek. *See* Ky. Rev. Stat. Ann. § 337.050.

80.     The Kentucky Wage Act entitles employees to a reasonable uninterrupted meal period during each work shift. *See* Ky. Rev. Stat. Ann. § 337.355.

81.     Defendants violated the Kentucky Wage Act by regularly and repeatedly failing to compensate the Rule 23 Class for the time spent on the work activities described in this Complaint.

82.     Defendants' uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

83.     As a result, the Rule 23 Class has and will continue to suffer loss of income and other damages. Accordingly, the Rule 23 Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the Kentucky Wage Act at an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Rule 23 Class, request judgment as follows:

a. Certifying this action as a class action pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' claims;

b. Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all Rule 23 Class members and permitting Plaintiffs to send notice of this action to all those individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Class members of their rights by law to opt out of this lawsuit;

c. Designating Plaintiffs RONALD ANDERSON and ANNA MARIA CRUZ as the representatives of the Rule 23 Class, and undersigned counsel as Class counsel for the same;

d. Declaring Defendants violated the state wage and hour laws/acts of the states of Kentucky as cited herein;

e. Declaring Defendants' violations of the state wage and hour laws/acts were willful;

f. Granting judgment in favor of Plaintiffs and against Defendants and awarding Plaintiffs and the Rule 23 Class the full amount of damages and liquidated damages available by law;

g. Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

h. Awarding pre- and post-judgment interest to Plaintiffs on these damages; and

i. Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Respectfully submitted,


   /s/        Charles W. Miller
Charles W. Miller
**CHARLES W. MILLER & ASSOCIATES**
Waterfront Plaza, Suite 2104
325 West Main Street
Louisville, KY 40202
(502) 583-2300
cmiller@cwmassociates.com



Kevin J. Stoops (*pro hac vice admission pending*)
Rod M. Johnston (*pro hac vice admission pending*)
**SOMMERS SCHWARTZ, P.C**.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
kstoops@sommerspc.com
rjohnston@sommerspc.com

*Attorneys for Plaintiffs and the Putative Class Members*